IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>ROBERT EUGENE MARSHALL and THOMASINA PARKS,<br><br>Defendants. | * * * * * * * * * * * * | 1:14-cv-170 |
| STATE FARM MUTUAL FIRE AND CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT EUGENE MARSHALL and THOMASINA PARKS,<br><br>Defendants. | * * * * * * * * * * * * * | 1:14-cv-220 |

## O R D E R

In these declaratory-judgment cases, two State Farm entities seek declarations that they do not owe coverage or a duty to defend or indemnify Defendant Robert Eugene Marshall for liability related to an altercation with Defendant Thomasina Parks in Marshall's Toyota Avalon. <u>State Farm Mutual Automobile Insurance Company v. Marshall et al.</u>, No. 1:14-cv-170 concerns coverage under an automobile insurance policy State Farm Mutual

Automobile Company issued to Marshall. In <u>State Farm Fire and Casualty Company v. Marshall et al.</u>, No. 1:14-cv-220, State Farm Fire and Casualty Company seeks similar relief for the same events with respect to a homeowners insurance policy it issued to Marshall. Marshall and Parks are Defendants in both cases. Though different State Farm entities are Plaintiffs in each case, the Court, for simplicity's sake, refers to both Plaintiffs as "State Farm" throughout.

These cases come before the Court on State Farm's motions requesting summary judgment in its favor on Counts I and II of its Complaint in Case No. 1:14-cv-170, and Count I of its Complaint in Case No. 1:14-cv-220. For the reasons discussed below, the Court **GRANTS** State Farm's motion for summary judgment in Case No. 1:14-cv-170 and **GRANTS** its motion in Case No. 1:14-cv-220.

## I. BACKGROUND

In August 2010, Defendant Robert Eugene Marshall purchased a 2005 Toyota Avalon for his then-girlfriend Defendant Thomasina Parks. The Avalon was purchased and registered in his name, and he signed the necessary financial paperwork. Marshall purchased the vehicle for Parks's use because her credit history prevented her from purchasing the vehicle in her own name. Parks, however, made payments for the Avalon, first indirectly by paying Marshall and later directly to Capital One Auto

Finance. Parks also contributed toward Marshall's automobile insurance policy, which covered the Avalon. At all times relevant, Parks was the only person who drove the Avalon, though it remained registered in Marshall's name.

Years later, on April 20, 2013, Marshall asked Parks to come to his house in Hephzibah, Georgia to discuss the status of their relationship. Parks drove the Avalon to Marshall's house and parked it in his driveway. While at his house, Parks told Marshall that their relationship was over. Before Parks left, Marshall told her to leave the keys to the Avalon with him. Parks refused. She then left his house, walked toward the Avalon, and started it using the push-ignition button. But Marshall was not far behind. Before Parks could close the driver-side door behind her, Marshall entered through it and, with one hand on the steering wheel, leaning his weight into Parks and reaching across her, used the push-ignition button to turn off the car. At this point, Marshall and Parks alternated turning the car on and off multiple times. During this exchange, Parks managed to briefly shift the car into reverse and travel down the driveway before Marshall turned the car off.

Eventually Parks reached for and grabbed a steak knife that was located in the car's console. Marshall claims that he seized the knife from Parks, turned around, exited the car, and threw the knife into hedges on his property. In his version of events, after throwing the knife, he turned around to find Parks

3

outside the car's passenger-side door. He claims to have not seen her exit the car.

Parks, on the other hand, maintains that, after Marshall grabbed the knife, he remained in the car and continued to lean his full bodyweight into her. Parks then attempted to exit the car by crawling over the console and opening the passenger-side door. While moving her right leg over the console, with Marshall's full weight on her, Parks suffered what was later diagnosed as a torn meniscus in her right knee. Soon after exiting, Parks discovered slit-type cuts from the steak knife on her arms. Parks insists that Marshall did not intend to cause the cuts or the knee injury.

Marshall is the named insured on an automobile insurance policy issued to him by State Farm Mutual Automobile Insurance Company. That policy covers a number of vehicles, including the Avalon, and identifies Parks as an additional driver. As relevant here, the policy contains two forms of coverage: (1) liability coverage with limits of $100,000 per person and $300,000 per accident; and (2) uninsured motorist coverage with limits of $100,000 per person and $300,000 per accident. Marshall is also the named insured under a homeowners policy issued by State Farm Fire and Casualty Company, which provides personal liability coverage with limits of $100,000.

On July 18, 2013, Parks issued a demand letter to State Farm requesting payment of $100,000 under Marshall's automobile

4

policy's liability coverage or, alternatively, $100,000 under the policy's uninsured motorist coverage. In April 2014, Parks filed a Complaint against Marshall in the Superior Court of Richmond County, Georgia seeking damages resulting from the incident. Parks's Complaint also alleges that Marshall's negligence caused her injuries. Parks served the state-court Complaint on Marshall, and also on State Farm.

Because of uncertainty regarding whether the policies provide coverage, State Farm filed these actions seeking declaratory relief regarding its obligations. Count I of State Farm's Complaint in Case No. 1:14-cv-170 requests a judgment declaring that the automobile policy provides no liability coverage to Marshall, that State Farm has no obligation to defend or indemnify Marshall, and that State Farm can legally deny liability coverage for Parks's claims. In Count II, State Farm seeks a declaration that the policy provides no uninsured motorist coverage for Parks's damages and that State Farm can legally deny coverage under that provision. In Case No. 1:14-cv-220, State Farm's Complaint seeks declaratory relief concerning liability coverage under the homeowners policy issued to Marshall.

State Farm served the Complaints on Parks, and she answered in each case. (Case No. 1:14-cv-170, Docs. 6, 8; Case No. 1:14-cv-220, Doc. 9, 13.) State Farm also served Marshall in both cases, but he has not answered, and the deadline to do so has

5

passed. (Case No. 1:14-cv-170, Doc. 7; Case No. 1:14-cv-220, Doc. 29, Ex. A.) State Farm has now moved for summary judgment in both cases. (Case No. 1:14-cv-170, Doc. 23; Case No. 1:14-cv-220, Doc. 21.)

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). If the burden of proof at trial rests with the movant, to prevail at summary judgment, the movant must

6

show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (*en banc*). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at summary judgment either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof. Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)).

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward

with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In these cases, the Clerk of the Court gave Defendants notice of State Farm's motions for summary judgment and informed them of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Case No. 1:14-cv-170, Docs. 25, 28, 29; Case No. 1:14-cv-220, Docs. 22, 27, 28.) The notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam) are therefore satisfied, and the motions are ripe for review.

### III. ANALYSIS

From the outset, the Court notes that Georgia courts have interpreted terms in various insurance policies differently depending on the kind of policy at issue. Two different policies with a combined three coverage provisions are presented in these cases: a homeowners general liability policy and an automobile insurance policy that contains a liability coverage

provision and an uninsured motorist coverage provision. Below, the Court separately addresses State Farm's arguments regarding whether coverage exists under the homeowners policy (Case No. 1:14-cv-220, Count I), liability coverage under the automotive policy (Case No. 1:14-cv-170, Count I), and uninsured motorist coverage under the automotive policy (Case No. 1:14-cv-170, Count II).

### A. Case No. 1:14-cv-220, Count I: Liability Coverage under Marshall's Homeowners Policy

State Farm contends that Parks's claims against Marshall are not covered by Marshall's homeowners policy. The policy provides personal liability coverage for claims brought "against an insured for damages because of bodily injury caused by an occurrence." (Homeowners Insurance Policy, Case No. 1:14-cv-220, Doc. 21, Ex. 8 at 29.) The policy defines "occurrence" as "an accident, including exposure to conditions, which results in bodily injury . . . ." (Id. at 16.) State Farm argues that, because Marshall's acts were intentional, the injuries suffered by Parks were not caused by an accident, and therefore no coverage exists under the policy.

The policy does not define "accident." Georgia courts, however, regularly define "accident" as used in liability policies, including, in particular, homeowners policies. See, e.g., Allstate Ins. Co. v. Neal, 696 S.E.2d 103, 105 (Ga. Ct. App. 2010). In similar policies, Georgia courts have defined an

9

accident as an "event which takes place without one's foresight or expectation or design." <u>Allstate Ins. Co. v. Grayes</u>, 454 S.E.2d 616, 618 (Ga. Ct. App. 1995) (quoting O.C.G.A. § 1-3-3(2)). In applying that definition, courts "have generally held that where an act is intentional, it does not constitute an 'accident' as that term is defined in an insurance policy." <u>Owners Ins. Co v. James</u>, 295 F. Supp. 2d 1354, 1363 (N.D. Ga. 2003). Thus, Georgia draws a distinction between insurance coverage for injuries that are unexpected but "arise from a conscious voluntary act" and injures that are the "unexpected result of an unforeseen or unexpected act that was involuntarily or unintentionally done." <u>Id.</u> at 1364 (citing <u>Provident Life and Accident Ins. Co. v. Hallum</u>, 576 S.E.2d 849, 851 (Ga. 2003)). Under Georgia law, only the latter are covered by the term "accident." <u>Hallum</u>, 576 S.E.2d at 851. Accordingly, for Marshall to be covered under the homeowners policy, Parks's injuries must have come from unforeseen or unexpected acts that were involuntarily or unintentionally done.

Viewing the evidence in the light most favorable to Defendants, as the non-movants, the evidence undisputedly shows that Marshall intended all the acts that occurred. Specifically, Marshall intended to stop Parks from driving the car, he intentionally leaned his weight into her, and, when Parks retrieved the steak knife from her console, he intentionally took it from her and continued leaning into her in

10

an attempt to control the car.[1] Though Marshall, in his deposition testimony, said that he did not intend to injure Parks, that is immaterial for purposes of insurance coverage. The policy only covers unexpected injuries that result from unintentional or involuntary acts and does not cover unintentional injuries that result from intentional acts. Therefore, what matters is that there is no evidence that an unintentional act caused Parks's bodily injuries.

Parks agrees on the interpretation of "accident" under the policy, but attempts to create a dispute over material facts. In particular, Parks believes material facts are in dispute because "Mr. Marshall contends that he was nowhere near Ms. Parks at the time of her injury, and he disputes her allegations that Mr. Marshall was inside the vehicle with her at the time of injury." (Def. Opp. Br. at 4, 1:14-cv-220, Doc. 24, Ex. 4.) These disputed facts could be material, but only to the state-court tort action and not to this case. Here, for coverage to exist under the homeowners policy, Parks's injuries must have been caused by Marshall's unintentional acts. Thus, a disputed

---

[1] Marshall disputes that he leaned his bodyweight into Parks and that he was present in the car when she tore her meniscus. In interpreting the evidence in the light most favorable to Parks, as the non-movant, the Court notes that, to recover under the policy, Parks must demonstrate that an accident "resulted in" the meniscus tear and the knife cuts to her arm. (Homeowners Policy, 1:14-cv-220, Doc. 21, Ex. 8 at 16.) Accordingly, at summary judgment, the Court finds that Marshall remained in the car throughout the altercation and leaned his bodyweight into Parks, otherwise there would be no evidence whatsoever of what caused the meniscus tear.

material fact would be one that showed an unintentional act that caused Parks's injuries. Under Marshall's version of events, Marshall was not present in the car when Parks tore her meniscus. But there is no evidence that an unintentional act by Marshall caused Parks's injuries, only that he was not present when the alleged injuries occurred. And in Parks's version, Marshall is present in the car, but all of Marshall's acts were intentional, even if the injuries were unintentional. Absent evidence that an unintentional act by Marshall resulted in Parks's injuries, there is no disputed material fact that could preclude summary judgment.

Because the undisputed facts show that Parks's injuries were not caused by an "accident," the Court **GRANTS** summary judgment in favor of State Farm Fire and Casualty Company on Count I in Case No. 1:14-cv-220.

### B. Case No. 1:14-cv-170, Count I: Liability Coverage under Automobile Policy

The liability coverage provision of Marshall's automobile insurance policy provides that State Farm "will pay damages an insured becomes legally liable to pay because of bodily injury to others . . . caused by an accident that involves a vehicle for which that insured is provided Liability Coverage by this policy." (State Farm Car Policy Booklet, Doc. 23 Ex. 8 at 14-15 (emphasis removed)). "Insured" is further defined, in relevant

12

part, as "you . . . for the ownership, maintenance, and use of your car . . . ." (Id. at 14.)

State Farm argues that no coverage exists because the accident did not arise out of the "ownership, maintenance, or use" of the Toyota Avalon. If so, Marshall would not be an "insured" for purposes of Parks's claims against him.

For her part, Parks points to the numerous connections between the altercation and the vehicle's "use." Most notably, the entire dispute centered on the question of who owned the vehicle, Parks or Marshall. Moreover, during the altercation, the car was repeatedly turned on and off, Parks was briefly able to shift the car into reverse and back down the driveway, and Marshall had his hand on the steering wheel. In short, Parks's view is that her injuries arose out of a fight for control of the vehicle.

The term "ownership, maintenance, and use" is frequently used in automobile insurance policies and just as frequently interpreted by courts. Georgia courts are no different in this regard. In Georgia, the clause "ownership, maintenance, and use" "is usually interpreted in a broad sense for the usual reasons: that it is ambiguous, or should be construed in favor of the insured, or against the party drafting it, and the burden of proving an exclusion is on the insured." Southeastern Fidelity Ins. Co. v. Stevens, 236 S.E.2d 550, 563 (Ga. Ct. App.

13

1977). The car's "use" does not need to be the proximate cause of the claimant's bodily injuries. Id. Instead,

> [f]or an injury to result from the use of a motor vehicle, there must be such a causal connection as to render it more likely that the injury "grew out" of the . . . use of the vehicle. . . . [T]he connection must not be merely fortuitous. There must be more of a connection between the use of the vehicle and the resulting injury than mere presence in the vehicle when the injury was sustained.

State Farm Mut. Auto. Ins. Co. v. Myers, 786 S.E.2d 787, 788 (Ga. Ct. App. 2012) (quoting Davis v. Criterion Ins. Co., 345 S.E.2d 913, 914-15 (Ga. Ct. App. 1986)).

As stated above, the connection between the injuries and the vehicle must be more than that the vehicle was the location of the injuries. For instance, assaults occurring on buses have been held to not arise out of the vehicle's "use"; rather, the vehicle is "merely the unfortunate location where [the assailant and the victim] crossed paths." Davis, 345 S.E.2d at 915 (discussing numerous cases concerning assaults on buses); see also Payne v. Twiggs Cty. Sch. Dist., 496 S.E.2d 690, 692 (Ga Ct. App. 1998) (finding that an assault on a school bus did not constitute an injury arising from the vehicle's "use"). Similarly, the sexual assault of a mentally disabled adult ward in the backseat of a car was held to not arise from the car's "use." Myers, 786 S.E.2d at 789.

14

Given that this altercation concerned the control of the Avalon, this case resembles those where drivers are injured during the theft of car. In <u>Westberry v. State Farm Mutual Automobile Ins. Co.</u>, 347 S.E.2d 688 (Ga. Ct. App. 1986), the court found the shooting death of a taxi-driver during a robbery while he was seated in his taxi did not arise out of the taxi's use, despite likely intent to steal the taxi's proceeds. 347 S.E.2d at 689; <u>see also</u> <u>USAA Prop. & Cas. Ins. Co. v. Wilbur</u>, 427 S.E.2d 49, 51 (Ga. Ct. App. 1993) (finding no "use" where victim was kidnapped, shoved into insured vehicle, assaulted, driven across state lines, and later killed shortly after exiting the vehicle).

Occasionally, Georgia courts have confronted cases where one party commits an assault by using a car to run into or over a victim. <u>See</u> <u>American Protection Ins. Co. v. Parker</u>, 258 S.E.2d 540 (Ga. Ct. App. 1979); <u>Martin v. Chicago Ins. Co</u>, 361 S.E.2d 835 (Ga. Ct. App. 1987). From the Court's review of these cases, the questions presented have all focused on whether these assaults could be considered "accidents" under the policies. In such cases, it appears to be assumed by the litigants, and possibly the courts as well, that where the car is used as the instrumentality to injure the victim, such an assault constitutes "use" under an insurance policy. So, even though these cases address "accident" under insurance policies, it is plain to see that assaults where the car is the instrumentality

15

of the injury bear the necessary "causal connection," Davis, 345 S.E.2d at 914-15, with the injuries and are not the mere location of the assault.[2]

Here, Parks suffered injuries during a fight over control of the car, the ownership of which was in dispute. But Parks's injuries are consistent with an assault, as in Davis, Payne, and Myers, and the car was the mere location of that assault and not the instrumentality of her injuries. See Davis, 345 S.E.2d at 915 (summarizing cases); Wilbur, 427 S.E.2d at 51 (distinguishing the facts of Wilbur from the injuries sustained in Parker where the victim was run over by a vehicle). This fight over ownership and control of the Avalon could have occurred in Marshall's house when he asked for the keys; that it occurred inside Marshall's car while located in his driveway

---

[2] In most circumstances, to find "use," Georgia courts appear to require the car to strike something or someone, causing injuries to the occupants or third parties. There is authority, however, for finding "use" when the accidental discharge of guns injures an occupant, particularly where the discharge occurs while loading or unloading the guns from the car or because the vehicle encountered bumpy roads. E.g., Southeastern Fidelity Ins. Co. v. Stevens, 236 S.E.2d 550, 551 (Ga. Ct. App. 1977); Georgia Farm Bureau Mut. Ins. Co. v. Burnett, 306 S.E.2d 734, 736 (Ga. Ct. App. 1983). Burnett is, perhaps, the closest case in this regard. In Burnett, the driver aimed a gun at his passenger and it subsequently discharged. 306 S.E.2d at 735. Evidence supported the insured's theory that the discharge was caused by the vehicle traveling over bumpy roads, thus arising out of the vehicle's use. Id. at 736. The present case is, however, more similar to Westberry, discussed above, where the court determined that the injuries to the taxi driver did not arise out of the taxi's use. 347 S.E.2d at 689.

16

does not make Parks's injuries arise out of the car's "use." It is also no matter that the car was briefly placed in reverse. In Myers, for example, the sexual assault happened in the car's backseat while returning from a doctor's appointment, but the court still found that the car was only "tangentially connected to [the victim's] injuries as the situs of the attack . . . ." Myers, 728 S.E.2d at 789 (citing Payne, 496 S.E.2d at 692).

Because Parks's injuries do not bear a connection to the use of Marshall's car, the Court, therefore, **GRANTS** State Farm's motion for summary judgment with respect to Count I in 1:14-cv-170.[3]

### C. Case No. 1:14-cv-170, Count II: Uninsured Motorist Coverage

State Farm argues that Parks is not entitled to uninsured motorist coverage because she does not qualify as an "insured" as defined in the policy and because Marshall's Avalon does not qualify as an "uninsured motor vehicle" under the policy. More specifically, State Farm argues that Parks is not an "insured"

---

[3] Just as in Part III.A., State Farm also argues that all of Marshall's actions were intentional and, therefore, are not "accidents" under the policy. Parks, however, argues that, in the automobile liability coverage context, Georgia courts "have repeatedly held that both intentional and unintentional acts are covered." (Def. Opp. Br., Doc. 26, Ex. 4 at 5.) Because the Court resolves this motion on the basis of the "ownership, maintenance, and use" clause, the Court does not reach the question of whether Marshall's acts constituted an accident under the automobile liability policy.

because the policy only covers those using the vehicle within the scope of the named insured's consent, and Marshall revoked his consent before the altercation took place. Additionally, State Farm argues that the Avalon falls into the second exception to the policy's definition of "uninsured motor vehicle" because the Avalon is "owned by" the named insured, Marshall.

In opposing summary judgment, Parks only addressed State Farm's motion on Count I and did not respond to State Farm's arguments regarding uninsured motorist coverage. "[A] party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed. . . . [W]hen a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned." Jones v. Bank of Am., N.A., 564 F. App'x 432, 434 (11th Cir. 2014) (internal quotations omitted) (quoting Kramer v. Gwinnett Cty., Ga., 306 F.Supp. 2d 1219, 1221 (N.D. Ga. 2004); Hudson v. Norfolk S. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001)). In light of State Farm's logical argument for why no uninsured motorist coverage exists, and Parks's failure to respond, the Court **GRANTS** State Farm's motion for summary judgment with respect to Count II in Case No. 1:14-cv-170.

## IV. CONCLUSION

As discussed, the Court **GRANTS** State Farm's motion for summary judgment in Case No. 1:14-cv-170. (Doc. 23.) The Court also **GRANTS** State Farm's motion in Case No. 1:14-cv-220. (Doc. 21.) The Clerk **SHALL** enter judgment in favor of State Farm in Case No. 1:14-cv-170 and Case No. 1:14-cv-220 and **CLOSE** both cases.

**ORDER ENTERED** at Augusta, Georgia, this 30th day of March, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA